IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

PLUMBERS AND STEAMFITTERS
LOCAL NO. 150 PENSION FUND and
JEFFREY RICE, RORY LAFONTAINE,
JOHN LEWIS ROBERTSON, LARRY L.
HALL, JR., and CLAY HARLEY, as
Trustees of the Pension Fund,

Plaintiffs,

v.

MUNS GROUP, INC., MUNS
MECHANICAL, INC., and C&M
EQUIPMENT LEASING, INC.,

Defendants.

1:15-cv-200

**O R D E R**

This case concerns a dispute between Plaintiffs Plumbers and Steamfitters Local 150 Pension Fund and its trustees Jeffrey Rice, Rory Lafontaine, John Lewis Robertson, Larry L. Hall, Jr., and Clay Harley (collectively "the Pension Fund" or "the Fund") and Defendants Muns Group, Inc., Muns Mechanical, Inc., C&M Equipment Leasing, Inc., and non-party Muns Welding and Mechanical Inc. As will be discussed in detail below, this is the third case concerning this dispute between the Pension Fund and Muns Welding Mechanical, Inc.

The Pension Fund's motions for judgment on the pleadings and to strike Defendants' affirmative defenses are presently

before the Court. (Docs. 16, 17.) For the reasons below, the Court **GRANTS** both motions.

## I. BACKGROUND

This case arose from a dispute between the Pension Fund, a multiemployer employee pension benefit plan, and non-party Muns Welding and Mechanical Inc. ("MWM"), one of its participating employers. According to the Pension Fund, MWM participated in the Fund until September 30, 2014 at which time it withdrew completely. (Compl. ¶ 17.) The Pension Fund calculated MWM's accelerated withdrawal liability to be $2,416,913. (Compl. ¶ 18; Answer ¶ 18.) As explained below, the Pension Fund now brings this action to recover the accelerated withdrawal liability of $2,416,913 from entities related to MWM.

Before discussing the present case in more detail, the Court addresses relevant background from previous cases involving these parties. In February 2015, MWM filed a complaint against the Pension Fund's Board of Trustees and Charles I. Hardigee, the business manager of Plumbers and Steamfitters Local 150, seeking declaratory and injunctive relief in an attempt to establish that it was not liable to the Pension Fund for failing to make contributions. Muns Welding & Mech., Inc. v. Bd. of Trs. Of Plumbers & Steamfitters Local No. 50 Pension Fund, No. 1:15-cv-17, Compl., Doc. 1 ¶¶ 31-49 (S.D. Ga. Feb. 2, 2015) ("Muns Welding I"). Soon after, the Pension

Fund filed its own suit in this Court seeking a single installment payment on withdrawal liability. See Plumbers & Steamfitters Local No. 50 Pension Fund v. Muns Welding and Mech., Inc., No. 1:15-cv-38, Compl., Doc. 1 ¶ 47 (S.D. Ga. Mar. 6, 2015) ("Muns Welding II"). On April 2, 2015, the Court granted the Pensions Fund's motion to dismiss in Muns Welding I on the grounds that ERISA mandates that withdrawal-liability disputes be addressed in arbitration. Muns Welding I, Order, Doc. 46.

While these cases were proceeding, the Pension Fund mailed letters dated February 9, 2015 and June 4, 2015 demanding installment payments on the withdrawal liability. (Compl. ¶ 25, Ex. 4-6; Answer ¶ 25.) Additionally, on March 20, 2015, the Pension Fund notified MWM that it had reviewed and confirmed its determination that MWM had completely withdrawn from the Fund. (Compl. ¶ 26; Answer ¶ 26); See 29 U.S.C. § 1399(b)(2)(B). Under 29 U.S.C. § 1401(a)(1)(A), MWM had sixty days from the time the Pension Fund notified MWM of its complete-withdrawal determination to initiate arbitration proceedings challenging the Pension Fund's withdrawal-liability determination. (Compl. ¶ 26; Answer ¶ 26.) Defendant never filed arbitration and never made any installment payments. (Compl. ¶ 27; Answer ¶ 27.) On July 28, 2015, the Pension Fund notified MWM of its determination that a default occurred and that the Pension Fund demanded accelerated withdrawal liability in the amount of

$2,416,913. (Compl. ¶ 28, Ex. 6; Answer ¶ 28.) Defendants admit that they have not made payment on the accelerated withdrawal liability. (Compl. ¶ 25; Answer ¶ 25.)

On October 30, 2015, the Court granted the Pensions Fund's motion for judgment on the pleadings in <u>Muns Welding II</u> and found MWM liable to the Pension Fund for the first installment payment of $59,491.40. (Compl. ¶ 21, Ex. 1; Answer ¶ 21); <u>Muns Welding II</u>, Order, Doc. 44 at 8. At the Court's direction, the Clerk entered judgment in the Pension Fund's favor and against MWM for $59,491.40. (Compl. ¶ 21, Ex. 2); <u>Muns Welding II</u>, Judgment, Doc. 45. MWM failed to satisfy the judgment and entered bankruptcy on November 20, 2015. (Compl. ¶¶ 21, 23, 24; Answer ¶¶ 19, 23-24.)

The Court now returns to the instant case. The Pension Fund filed a Complaint on December 16, 2015 alleging that Defendants Muns Group, Inc., Muns Mechanical Inc., and C&M Equipment Leasing, Inc. are jointly and severally liable for the accelerated withdrawal liability of $2,416,913. (Compl. ¶¶ 29-31.) As mentioned previously, MWM is not a party to this case. However, non-party Richard Lee Muns, Jr. owns a 100% interest in all Defendants and in non-party MWM. (Answer ¶ 36.) Defendants further admit that they are in a parent-subsidiary relationship with MWM under the applicable treasury regulation, 26 C.F.R. § 1.414(c)-2(b), (Compl. ¶ 34; Answer ¶ 34), and that they are members of MWM's controlled group and that Defendants and MWM

constitute a "single employer" under 29 U.S.C. § 1301(b)(1). (Compl. ¶ 38; Answer ¶ 38.)

Defendants deny liability for the accelerated withdrawal payment and assert five affirmative defenses. (Answer at 1-4, ¶¶ 38-40.) On February 11, 2016, the Pension Fund filed a motion for judgment on the pleadings and a motion to strike Defendants' affirmative defenses. (Docs. 16-17.) Because both parties acknowledge the overlapping nature of the motions, the Court addresses the motions together.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). However, a judgment on the pleadings is only appropriate "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1300 (11th Cir. 2001). A fact is "material" if "it might affect the outcome of the suit under the governing [substantive] law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "In other words, a judgment on the pleadings alone, if sustained, must be based on the undisputed facts appearing in all the pleadings." Stanton v. Larsh, 239 F.2d 104, 106 (5th Cir. 1957).

The legal standards governing Rule 12(c) motions are the same as those governing Rule 12(b)(6) motions to dismiss. Roma Outdoor Creations, Inc. v. City of Cumming, Ga., 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008) ("A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss."). Therefore, Pension Fund's complaint "must contain sufficient factual matter to state a claim for relief that is 'plausible on its face.'" JP Morgan Chase Bank, N.A. v. Sampson, No. 1:10-cv-1666, 2012 WL 949698, at *2-3 (N.D. Ga. Mar. 20, 2012) (quoting Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010)). To be "plausible on its face," the complaint must have enough "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In applying this standard, factual allegations are accepted as true, but legal conclusions are not. Id.

### III. DISCUSSION

Below, the Court begins by addressing whether the Pension Fund can demonstrate a prima facie case for judgment on the pleadings regarding Defendants' liability. The Court then discusses whether the affirmative defenses Defendants assert preclude judgment on the pleadings.

## A. The Pension Fund's Claim for Accelerated Withdrawal Liability

In <u>Muns Welding II</u>, the Court stated that for the Pension Fund to prevail and for MWM to be liable for the installment payment, seven requirements must be met:

> (1) Plaintiff Pension Fund is a multiemployer plan; (2) [MWM] is an employer within Pension Fund's multiemployer plan; (3) Plaintiffs Rice and Lafontaine are "plan sponsor[s]"; (4) Plaintiffs contend that [MWM] withdrew from the plan; (5) Plaintiffs notified [MWM] of the amount of withdrawal liability and the schedule for its payment; (6) Plaintiffs demanded payment from [MWM]; and, (7) [MWM] has failed to make one or more withdrawal liability payments.

<u>Muns Welding II</u>, Doc. 44 at 6. The Court found that the admissions contained in MWM's Answer established each of these requirements and "entitled [the Pension Fund] to interim payments from [MWM]." <u>Id.</u> at 8.

Although the Pension Fund seeks accelerated withdrawal payments from different defendants in this action, the legal requirements are nearly the same. Just as in <u>Muns Welding II</u>, the pleadings establish the seven requirements mentioned above. Defendants admit that the Pension Fund is a multiemployer plan (Compl. ¶ 2; Answer ¶ 2); MWM is an employer with the plan (Compl. ¶ 17; Answer ¶ 17); (3) Jeffrey Rice, Rory LaFontaine, John Lewis Robertson, Larry L. Hall, Jr., and Clay Harley are plan sponsors; (Compl. ¶¶ 4-8; Answer ¶¶ 4-8); (4) the Pension Fund determined that MWM withdrew from the plan (Compl. ¶ 18;

7

Answer ¶ 18.)[1]; the Pension Fund notified MWM and the Defendants of the amount of withdrawal liability and the schedule for its payment, including, in particular, the accelerated withdrawal liability (Compl. ¶ 28, Ex. 6; Answer, ¶ 28); the Pension Fund demanded payment from Defendants for that liability (Compl. ¶ 28, Ex. 6; Answer, ¶ 28); and (7) Defendants have failed to make payment on the accelerated withdrawal liability. (Compl. ¶ 25; Answer ¶ 25.)

The only additional issue raised in this case is whether the Defendants can be treated as a controlled group and single employer with MWM and therefore be jointly and severally liable for the accelerated withdrawal liability. ERISA states, "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1). Defendants admit that they constitute a controlled group and a single employer with MWM under § 1301(b)(1). (Compl. ¶ 38; Answer ¶ 38.)

---

[1] Defendants dispute the Pension Fund's conclusion that Defendants defaulted on their payment obligations. However, they do not dispute that the Pension Fund determined they were in default and notified them of that default. (Compl. ¶ 28, Ex. 6; Answer, ¶ 28.) For purposes of Plaintiff's withdrawal liability claim, those admissions are sufficient. As this Court has previously explained, and discusses again below, Defendants must dispute Plaintiff's determination in an arbitration proceeding before disputing liability in this Court. See Muns Welding I, Doc. 46 at 19.

The Court is therefore satisfied that Defendants, along with MWM, constitute a single employer under § 1301(b)(1), and, together with MWM, have failed to make payments on the accelerated withdrawal liability. Before determining whether Defendants are liable, the Court turns to their affirmative defenses.

### B. Defendants' Defenses

In their Answer, Defendants raised the following five affirmative defenses which the Court addresses below.

#### 1. Judgment-Enforcement Theory

Defendants' first defense is that the Pension Fund fails to state a claim upon which relief can be granted. Based on their brief in opposition to judgment on the pleadings, Defendants appear to contend that the Pension Fund's Complaint should be interpreted to seek enforcement of the judgment from Muns Welding II and therefore fails to state a claim for accelerated withdrawal liability.

Defendants' judgment-enforcement defense can be illustrated with a simple hypothetical. Plaintiff A sues Defendant X seeking a single withdrawal-liability installment payment. The court enters judgment in favor of Plaintiff A. Plaintiff A then brings suit against Defendant Y, who is part of the same controlled group as Defendant X, for the same installment payment. In these circumstances, courts have found that

9

Plaintiff A's second action is in the nature of judgment enforcement because, as a member of the same controlled group, and thus a single employer under § 1301(b)(1), Defendant Y is jointly and severally liable on the first judgment concerning the *same* installment payment. See generally Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Able Truck Rental Corp., 822 F. Supp. 1091, 1093 (D.N.J. 1993) ("More than six years later, on September 30, 1991, the Fund brought the instant action, alleging that as members of a controlled group with Trucking, defendants are responsible for the judgment previously entered against Trucking."); Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Gotham Fuel Corp., 860 F. Supp. 1044, 1050 (D.N.J. 1993). Defendants argue that the Pension Fund's Complaint seeks enforcement of the judgement in Muns Welding II and that the Fund's recovery is therefore limited to $59,491.49 plus interest equal to $4,726.71 and attorneys' fees.

Defendants' argument fails because, as explained in more detail in Part II.B.2 of this Order, the Pension Fund's claim for relief in Muns Welding II is different from the claim it brings in this case. Specifically, the Pension Fund's Complaint seeks $2,416,913.00 for accelerated withdrawal liability, plus interest and costs, while in Muns Welding II the Pension Fund sought a single installment payment. (Compare Compl., Doc. 1, ¶41 with Muns Welding II, Compl., Doc. 1, ¶ 47.) It goes

without saying that a plaintiff who sues on a different claim than one litigated in a prior case cannot be seeking to enforce the prior judgment. The Court, therefore, declines to interpret the Pension Fund's claim as seeking the enforcement of the Muns Welding II judgment.

### 2. Res Judicata

The bulk of Defendants' response brief addresses its *res judicata* defense. Because the pleadings establish that the Pension Fund's present claim is different from the claim in Muns Welding II and it arose after that case was filed, Defendants' *res judicata* defense fails as a matter of law.

As discussed above, the Pension Fund's Complaint in Muns Welding II concerned an installment payment while this case concerns $2,416,913.00, plus interest and costs, in accelerated withdrawal liability. In Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, 522 U.S. 192, 202 (1997), the Supreme Court held that a cause of action for withdrawal liability does not exist until: (1) the trustees "calculate the debt, set a schedule of installments, and demand payment"; and (2) the withdrawing employer defaults on an installment due under the trustees' schedule. Id. at 202. The Supreme Court also explained that, "[l]ike the typical installment creditor, the plan has no right, absent default and acceleration, to sue to collect payments before they are due,

11

and it has no obligation to accelerate on default." Id. at 208, 210.

When the Pension Fund filed Muns Welding II, it had only made a demand on the first installment payment. Muns Welding II, Compl. ¶ 33; (Compl., Doc. 1, Ex. 3). It was not until July 28, 2015 that the Fund notified Defendants of its determination that Defendants were in default and demanded the accelerated withdrawal liability. (Compl. ¶ 28, Ex. 6, Answer ¶ 28.) Accordingly, the Pension Fund could not have sued for accelerated withdrawal liability at the time it filed Muns Welding II.

So far, the Court has found that the Pension Fund's installment-payment claim in Muns Welding II is independent from its claim for accelerated withdrawal payments in this case and that the Fund could not have brought the accelerated-withdrawal-liability claim when it filed Muns Welding II. As explained below, those findings necessitate the conclusion that *res judicata* does not bar the Pension Fund's claim in this case.

Federal courts apply the *res judicata* law of the state in which they sit. Starship Enters. of Atlanta, Inc. v. Coweta Cty., Ga., 708 F.3d 1243, 1252-54 (11th Cir. 2013). Georgia's statutory *res judicata* rule is a codification of its long-standing common-law rule. Fowler v. Vineyard, 405 S.E.2d 678, 682 (Ga. 1991). Georgia law provides that "[a] judgment of a court of competent jurisdiction shall be conclusive between the

12

same parties and their privies as to all matters put in issue <u>or which under the rules of law might have been put in issue</u> in the cause wherein the judgment was rendered until the judgment is reversed or set aside." O.C.G.A. § 9-12-40 (emphasis added).

Defendants argue that the Pension Fund should have amended its Complaint "to sue for any liability that arose from any default that occurred after the first quarterly payment became due." (Defs.' Br., Doc. 23 at 5-6.) Georgia law, however, only requires parties to bring claims that "might have been put in issue." O.C.G.A. § 9-12-40. The Eleventh Circuit, while applying Alabama law has held that "for res judicata purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims *actually* asserted by supplemental pleadings or otherwise in the earlier action." <u>Manning v. City of Auburn</u>, 953 F.2d 1355, 1360 (11th Cir. 1992). The Court concludes that because the Pension Fund could not have brought the accelerated-withdrawal-liability claim when it filed <u>Muns Welding II</u> in March 2015, Defendants' *res judicata* defense fails as a matter of law.

### 3. Waiver and Collateral Estoppel

Defendants' waiver and collateral estoppel defenses fail for similar reasons. In their Answer, Defendants claim that "the issues decided by this Court in [<u>Muns Welding II</u>] are identical to the case now before this Court, except that [the

Pension Fund is] now attempting to avoid the limitations on Defendants' liability that were clearly and expressly established" in the Court's Muns Welding II Order. (Answer at 3.)

As an initial matter, the Court disagrees with Defendants' characterization of its Muns Welding II Order granting judgment on the pleadings. In no way did the Court *indefinitely* limit MWM's or Defendants' liability to a single installment payment. The Order makes clear that judgment was only rendered on the first installment payment because that was the only liability established by the pleadings. Muns Welding II, Order, Doc. 44, at 8 n.1. Simply put, the Court limited the Pension Fund's recovery to the first installment payment because that is what it sued to recover.

More to the point, for largely the same reasons as discussed above, the Court does not find Defendants' waiver or collateral estoppel defenses credible. The Supreme Court has described the MPPAA's statutory acceleration provision as "permissive" in nature. Bay Area Laundry, 522 U.S. at 208. Therefore, the Pension Fund did not waive its right to accelerated payments by bringing a suit for an installment payment. Nor does collateral estoppel preclude this separate claim for the full $2,416,913 in withdrawal liability, interest, and attorneys' fees.

### 4. Bankruptcy Stay

In their Answer, Defendants asserted an affirmative defense based on the stay associated with MWM's bankruptcy. In their response brief, Defendants indicate that they wish to withdraw this defense. (Defs.' Br., Doc. 23 at 13.) The Court **GRANTS** this request.

### 5. Labor-Dispute Defense

Defendants argue that a labor dispute prevented them from making contributions to the Pension Fund between 2013 and approximately September 2015. They contend that the dispute makes them exempt from withdrawal liability under 29 U.S.C. § 1398(2), which provides that "an employer shall not be considered to have withdrawn from a plan solely because . . . an employer suspends contributions under the plan during a labor dispute involving its employees." For its part, the Pension Fund argues that the MPPAA required Defendants to make this argument in an arbitration proceeding and that their failure to do so precludes this affirmative defense.

This Court previously stated that the MPPAA requires Defendants' labor-dispute argument must be raised in arbitration. <u>Muns Welding I</u>, Order, Doc. 46 at 19. Defendants' failure to initiate arbitration proceedings within the sixty-day period resulted in default, and the withdrawal liability is therefore "due and owing." 29 U.S.C. § 1401(a)(1), (b)(1). In

short, Defendants missed their opportunity to raise this affirmative defense and it is precluded by their default.

For the reasons discussed above, the Court finds that Defendants' affirmative defenses all fail as a matter of law.

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Pension Fund's motion to strike Defendants' affirmative defenses (Doc. 17) and the Pension Fund's motion for judgment on the pleadings (Doc. 16). The Court finds that Defendants are jointly and severally liable to Plaintiff for unpaid contributions, interest on the unpaid contributions, and reasonable attorneys' fees and costs of the action under 29 U.S.C. § 1132(g)(2). The Court **DIRECTS** the Pension Fund to file their computation of damages within **TWENTY-ONE DAYS**. Defendants will have **FOURTEEN DAYS** to respond to the Fund's filing.

**ORDER ENTERED** at Augusta, Georgia, this 26th day of August, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA